1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| BRUCE THOMAS, | Case No.: 19cv1632-H (BLM) |
| Petitioner, | |
| v. | **ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY** |
| ADOLFO GONZALES, Chief Probation Officer of San Diego County, | |
| Respondent. | |

Bruce Thomas ("Petitioner") is a state probationer proceeding pro se and in forma pauperis with a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Petitioner was sentenced to 180 days in custody and three years of probation following a 2017 San Diego County Superior Court conviction for contempt of court for violating a criminal protective order imposed as a condition of probation following a 2014 conviction for resisting arrest. (Id. at 1.) He claims a condition of his current probation prohibiting him from coming within 100 yards of the victims and their property, who live in a duplex next to his elderly mother, prevents him from living in his mother's home, which he will inherit via a living trust through which he holds a property interest, and therefore violates his federal constitutional rights to due process, to liberty to travel to her home, to his property interest therein, to peacefully assemble and be secure there, and to the privileges and immunities of United States citizenship. (Id. at 5-10.)

Adolfo Gonzales, the Chief Probation Officer of San Diego County ("Respondent") has filed an Answer and lodged the state court record. (Doc. Nos. 5, 15, 16.) Respondent argues habeas relief is unavailable because the Petition is untimely, and, alternately, because the state court adjudication of Petitioner's claims is neither contrary to, nor involves an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. (Doc. No. 15-1 at 8-18.)

Petitioner has filed a Traverse with an attached Notice of Lodgment. (Doc. No. 17.) He argues his Petition is timely even if it requires equitable tolling of the statute of limitations. (Id. at 9-10.) He also argues he has shown by clear and convincing evidence that the state court denial of his claims is based on an unreasonable determination of the facts and is inconsistent with clearly established federal law. (Id. at 10.)

For the following reasons, the Court **DENIES** the Petition for a Writ of Habeas Corpus and **DENIES** a certificate of appealability.[1]

# I.  STATE PROCEDURAL AND FACTUAL BACKGROUND

The following background is taken from the opinion of the Appellate Division of the Superior Court. (Doc. No. 5-1, Lodgment No. 1.) "Factual determinations by state courts are presumed to be correct absent clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Petitioner's mother, Betty Thomas, 86-years old at the time of trial, lives in a duplex which shares a common wall with the home of Florence Weiss, 91 years of age at the time of trial. (Doc. No. 5-1, Lodgment No. 1 at 2-5.) The two women were best friends for over 20 years until Petitioner and his wife moved in with his mother in 2013 as her caretaker. (Id. at 3.) Florence Weiss obtained a civil restraining order in 2013 requiring Petitioner to stay 2 yards away from her and her property. (Id.)

---

[1] Although this case was randomly referred to United States Magistrate Barbara L. Major pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument are necessary for the disposition of this matter. See S.D. Cal. Civ.L.R. 71.1(d).

Petitioner was arrested for violating the civil restraining order and for resisting arrest in 2014.  (Id.)  He was found not guilty of violating the civil restraining order but guilty of resisting arrest.  (Id.)  As a condition of his probation for that conviction, a criminal protective order was entered requiring him to stay 2 yards away from Florence Weiss, her property, and her daughter Carole Ursetti.  (Id.)  However, Petitioner "blamed them for his arrest and continued and escalated his vendetta against them, resulting in Mrs. Weiss installing security cameras on her property."  (Id.)

On September 1, 2016, Petitioner observed Carole Ursetti moving a potted plant to the side of the Weiss home.  (Id. at 2.)  Petitioner entered Florence Weiss's property, chased her and yelled at Carole Ursetti, all of which was captured by the security cameras.  (Id.)  Petitioner admitted to police he had not been thinking straight in entering the Weiss property, and was convicted on June 20, 2017, following a bench trial, of violating California Penal Code § 166(a)(4), contempt of court for violating the criminal protective order.  (Id.)

On June 22, 2017, a sentencing hearing was held at which Betty Thomas stated Petitioner will inherit her home upon her passing and the problems lie with Florence Weiss and her daughter, although defense counsel admitted Petitioner has anger management issues.  (Id.)  The trial judge invited counsel to address whether the distance in the criminal protective order should be increased from 2 yards to 100 yards, and defense counsel argued a 100-yard stay away order would preclude Petitioner from living with his mother and was unconstitutionally vague, overbroad and interfered with his property rights.  (Id.)  Petitioner was sentenced to 180 days in custody and a 3-year term of probation, which included a 100-yard stay away order.  (Doc. No. 1 at 1.)  In extending the distance in the stay away order from 2 to 100 yards, the trial judge stated:

> There is nothing vague about staying 100 yards away from Ms. Weiss, Ms. Ursetti, their home, their cars, their property.  There is nothing vague about that.  (¶)  There is - there is nothing unconstitutional about it, because I've heard in this case that Mr. Thomas and his wife have another residence, that they moved from that residence into Ms. Thomas', his mother's home to assist with providing her care, and so they are - they are basically guests in his

mother's home. . . . The fact that he may inherit the property at some point in the future that - requiring him to stay 100 yards away from these women, M[s]. Weiss and M[s]. Ursetti, does not violate any of his constitutional rights.

(Doc. No. 5-1, Lodgment No. 1 at 2, n.1.)

Petitioner's counsel filed a brief in the Appellate Division of the Superior Court which presented no arguable appellate issues but requested the court review the record for errors pursuant to People v. Wende, 25 Cal.3d 436 (1979). (Id. at 2.) Petitioner filed a pro se supplemental brief arguing, as he does here, that the 100-yard stay away order "impinged on his constitutional rights, including but not limited to his property rights and freedom of association with his mother." (Id. at 2-3.) The Appellate Division of the Superior Court affirmed the conviction on May 17, 2018. (Id. at 3.) A minute order filed the next day stated the court had reviewed the record pursuant to Wende and had considered Petitioner's supplemental brief but found no arguable appellate issues. (Doc. No. 16-2, Lodgment No. 5 at 1.) Petitioner did not file a petition to transfer his case to the Court of Appeal. As set forth below, Respondent contends the conviction became final for purposes of the one-year statute of limitations upon expiration of the time to seek review in the Court of Appeal.

On August 16, 2017, while his appeal was pending, Petitioner, through counsel, filed a motion to modify his probation to reduce the stay away distance from 100 yards to 2 yards in order to permit him to move back into his mother's home upon his release from custody. (Doc. No. 5-1, Lodgment No. 1 at 3.) On September 22, 2017, the court heard from Florence Weiss, Carole Ursetti, Betty Thomas and Petitioner's wife. (Id.) In denying the motion, the judge noted that Petitioner had harassed and intimidated Florence Weiss, had been given a "fair chance" with the 2-yard stay away order but violated it, and was seen on the security video "chasing after a 90-year old woman when there's a court order requiring him to stay two yards away from her." (Id. at 3, 4 n.3.)

About a year later, on September 17, 2018, after his conviction was affirmed on appeal, Petitioner, while represented by the office of the public defender, filed a second motion to modify the 100-yard stay away order to 2 yards, contending he had been law-

4

abiding and intended to obey the stay away order, the court could revoke his probation if he violated a 2-yard stay away order, and circumstances had changed in that his mother had been released from the hospital and was spending significant amounts of money on home health care Petitioner could be providing and Petitioner needed access to her home to conduct his home business. (Id. at 4.) The San Diego District Attorney filed an opposition to the motion contending there had been no change in circumstances warranting modification of the probation conditions. (Doc. No. 16-1, Lodgment No. 4.)

A hearing was held on October 12, 2018, at which Petitioner testified he moved into his mother's home in April 2013 to care for her when she needed help, that prior to that he and his wife lived in an apartment and she threatened to divorce him if they did not move into his mother's "nice house," that he runs a home-based business and cannot afford to live elsewhere, and that he has been diagnosed with intermittent explosive behavior disorder which causes him to lose jobs for which he collects social security disability payments. (Doc. No. 5-1, Lodgment No. 1 at 4-5.) In denying the motion, the trial court noted it "did not believe the defendant 'has insight yet as to how his conduct affects others . . . he blames everyone around him for his circumstances.'" (Id. at 5.) The court stated:

> So as I mentioned at the outset, this is a motion that requires a balancing of competing interests, and Mr. Thomas has raised and does raise some legitimate and reasonable points. Those have to be balanced against the points that were made by the People in their opposition and, in particular, the input of the victims, which I have as I mentioned, I've heard from them at least twice. And balancing all those factors, I will deny today's request to modify probation.

(Id. at 5.)

Petitioner appealed the denial of that motion to modify the stay away order, and on May 7, 2019, the Appellate Division of the Superior Court affirmed, stating:

> First, we note that the instant criminal protective order (CPO) at issue, which ordered the defendant to stay 100 yards away from the protected persons and their property, was issued on June 22, 2017, the date of sentencing in this case. The constitutional argument was made at the sentencing hearing that the CPO would preclude the defendant from living in his residence, his mother's home, and was unconstitutionally vague and overbroad. The

19cv1632-H (BLM)

argument was presented again in the defendant's supplemental appellate brief after his appointed counsel filed a *People v. Wende* brief, in the first appeal in this case. This court reviewed the entire record on appeal and the defendant's supplemental brief; we affirmed the judgment of conviction, which included the CPO. As such, the renewed challenge to the originally imposed CPO on constitutional grounds is untimely in this second appeal in the same case, and the Appellate Division's prior decision is final and not subject to reconsideration or further appeal.

Penal Code section 1203.3 gives the trial court authority to modify the terms of probation during the probations period. "A change in circumstances is required before a court has jurisdiction to . . . modify probation." (*People v. Cookson* (1991) 54 Cal.3d 1091, 1095.) This was the second time the defendant had sought a modification of the CPO and had a hearing on the issue, and been denied a modification of the CPO from 100-yards away from the victims to 2-yards away from the victims and their property. The trial court relied on its recollection of the trial evidence and statements taken at subsequent hearings and its review of the separate 2014 criminal matter that initially led to the imposition of a first CPO and the basis for the underlying charge in this case. The court noted that the defendant's interest in his residence had not changed; he was an invited guest in his mother's home and had no ownership rights in the property. The court weighed the competing interests of the parties, the defendant's history of harassment and intimidation of the victims, its belief that the defendant had no insight into his conduct, and denied the defendant's motion to modify the CPO by reducing the stay away order from 100-yards to 2-yards.

The standard of review applicable to the trial court's denial of appellant's motion to modify his probation is abuse of discretion. (*People v. Leal* (2012) 210 Cal.App.4th 829.) The standard of review is highly deferential and the sentencing court abuses its discretion only when its determination is arbitrary or capricious or exceeds the bounds of reason under a totality of the circumstances. (*Id*. at p. 843.)

We find no error with the trial court's ruling, and the denial of the motion to modify the CPO is affirmed.

(Id. at 5-6.)

On July 24, 2019, Petitioner, through counsel, filed a petition for a transfer to the Court of Appeal in order to appeal that decision. (Doc. No. 5-2, Lodgment No. 2.)

Petitioner argued in the petition for transfer that the Appellate Division had erred in relying on the record of his initial appeal of his conviction and in failing to consider his constitutional arguments because he was appealing the denial of his motion to modify his probation, not his conviction and sentence. (Id. at 7.) On August 8, 2019, the Court of Appeal denied the petition, stating: "The petition for transfer has been read and considered by Justices Huffman, O'Rourke and Irion. The petition is denied." (Doc. No. 5-3, Lodgment No. 3 at 1.) As set forth below, Petitioner argues the one-year statute of limitations was triggered by that order because that is what he is challenging here, and, alternately, that he is entitled to equitable tolling for a delay in filing that petition to transfer caused by circumstances outside his control.

## II. PETITIONER'S CLAIMS

(1) Petitioner's right to peaceably assemble in his house and to be secure therein to live with his wife and take care of his aging mother as protected by the First Amendment to the United States Constitution was violated by the 100-yard stay away order because it exceeded the trial court's discretion to balance the interests of the parties where there was no violence by Petitioner toward the protected parties and the trial judge stated "we almost always issue 100 yard stay away orders." (ECF No. 1 at 5.)

(2) Petitioner was deprived of his liberty and property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution by the 100-yard stay away order because he is being forced to find alternative living arrangements from a house he lived in for 20 years and will inherit by way of a living trust without affordable housing alternatives except motel rooms and homeless shelters, and was deprived of due process of law by the Court of Appeal's denial of his petition to transfer his case from the Appellate Division of the Superior Court. (Id. at 7.)

(3) Petitioner was deprived of his liberty to travel to his mother's house without due process of law in violation of the Fourteenth Amendment to the United States Constitution by the 100-yard stay away order which prohibits him from living with or near his aging parent and taking care of her. (Id. at 8.)

(4) Petitioner was denied the privileges and immunities of United States citizenship without due process of law in violation of the United States Constitution by the order requiring him to stay 100 yards away from his home.[2] (Id. at 10.)

## III.  DISCUSSION

### A.    Timeliness

A one-year statute of limitations applicable to federal habeas petitions pursuant to 28 U.S.C. § 2254 begins to run at the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Respondent correctly contends, and Petitioner does not dispute, there is support in the record only for § 2244(d)(1)(A) to provide the triggering date for the one-year statute of limitations, which began to run when Petitioner's conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review."  (Doc.

---

[2] The claims are identified, enumerated and addressed in this Order based on a liberal construction of the pro se federal Petition.  See Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants."), quoting Boag v. MacDougall, 454 U.S. 364, 365 (1982); see also Zichko v. Idaho, 247 F.3d 1015, 1020 (9th Cir. 2001) (holding that liberal construction of pro se prisoner habeas petitions is especially important with regard to which claims are presented).

19cv1632-H (BLM)

No. 15-1 at 11; Doc. No. 17 at 9.)  Respondent argues that date is 30 days after the Appellate Division's May 18, 2018 order affirming the conviction, which was the deadline for the Court of Appeal to transfer the case to itself on its own motion since Petitioner did not file a petition for transfer.  (Doc. No. 15-1 at 11.)  Petitioner argues that date is August 8, 2019, when the Court of Appeal denied the appeal of his motion to modify the terms of his probation because that is what he is challenging here.  (Doc. No. 17 at 7.)

The Ninth Circuit has held that a California misdemeanor conviction becomes final immediately upon the denial of a petition for transfer by the state appellate court. McMonagle v. Meyer, 802 F.3d 1093, 1096-97 (9th Cir. 2015) (en banc).  Because a misdemeanant may not appeal to the California Supreme Court where the petition to transfer has been denied, "the conclusion of direct review or the expiration of the time for seeking such review" within the meaning of § 2244(d)(1)(A) is the date the United States Supreme Court denied certiorari or the expiration of the 90-day deadline for filing a petition for certiorari following the denial of the petition for transfer.  Id. at 1097.  Unlike the petitioner in McMonagle, however, Petitioner here did not file a petition for transfer to the Court of Appeal in his original direct appeal of his conviction and sentence from the affirmance by the Appellate Division of the Superior Court but allowed the time to do so to expire.  As Respondent correctly observes, the Court of Appeal has 30 days in which to transfer appellate jurisdiction to itself on its own motion, see Cal.R.Ct. 8.1008(a)(1)(B) ("The Court of Appeal may order transfer . . . [o]n its own motion, within 30 days after the appellate division decision is final in that court."), but only if transfer would "secure uniformity [of decision] or [to] settle an important question of law."  Cal.R.Ct. 8.1002. When a petitioner fails to seek review in the state appellate court, however, the conviction is final upon the expiration for doing so, and Respondent provides no support for finding it is when the time expires for the state court to transfer the case to itself on its own motion. See Roberts v. Marshall, 627 F.3d 768, 771 (9th Cir. 2010) (holding that the one-year statute of limitations in § 2244(d)(1)(A) begins to run for a California prisoner upon the expiration for seeking review in the state appellate court).

19cv1632-H (BLM)

The Appellate Division's order is dated May 17, 2018, but it is file-stamped the next day, May 18, 2019. (Doc. No. 16-2 at 1.) Petitioner had 15 days from the date of that order to file a petition to transfer the appeal to the Court of Appeal. Cal.R.Ct. 8.1006(b)(1) ("The petition must be served and filed in the Court of Appeal after the appellate division issues its decision in the case but no later than 15 days after the decision in final in that court."); but see Cal.R.Ct. 8.1006(b)(2) ("The time to file a petition for transfer may not be extended, but the presiding justice may relieve a party from a failure to file a timely petition for transfer if the time for the Court of Appeal to order transfer on its own motion has not expired.") Because 15 days after May 18, 2018 fell on a Saturday, the conviction became final under state law at the latest on Monday, June 4, 2018. Cal.Code Civ.Proc., § 12a(a). The instant federal Petition was filed on August 29, 2019, one year and 86 days later. As will be seen, whether the conviction became final 15 days after May 17, 2018 when the Appellate Division's order is dated, or its May 18, 2018 filing date, or 30 days thereafter as Respondent contends, is not dispositive. Rather, if the expiration of time for seeking direct review of the conviction includes an additional 90 days to seek certiorari in the United States Supreme Court the Petition is timely, and if not, it is untimely.

In Gonzalez v. Thaler, 565 U.S. 134 (2012), the petitioner appealed his conviction to an intermediate appellate court but did not seek discretionary review in the state's highest court of criminal appeals. Id. at 138. The Supreme Court declined to allow petitioner the benefit of the 90-day period to seek certiorari with respect to the triggering date under § 2244(d)(1)(A) because it would have lacked jurisdiction over a petition for certiorari from the lower state court, noting that "[w]e can review, however, only judgments of a 'state court of last resort' or of a lower state court if the 'state court of last resort' has denied discretionary review." Id. at 150-54, citing Sup.R.Ct. 13.1. Because Petitioner did not petition the Court of Appeal for transfer of the Appellate Division's May 18, 2018 order affirming his conviction and sentence, the United States Supreme Court lacked jurisdiction to consider a petition for certiorari from the Appellate Division of the Superior Court, and the time for seeking direct review of the conviction under

§ 2244(d)(1)(A) expired on the last day Petitioner could have filed a petition to transfer his case to the Court of Appeal, at the latest on June 4, 2018. <u>Gonzalez</u>, 565 U.S. at 154; <u>Roberts</u>, 627 F.3d at 771; <u>McMonagle</u>, 802 F.3d at 1097.

The one-year limitations period began to run the next day, June 5, 2018. <u>See</u> <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1246 (9th Cir. 2001) (holding that "in computing any period of time prescribed or allowed by . . . any applicable statute, the day of the act, event, or default from the designated period of time begins to run shall not be included.") Absent tolling of the limitations period, Petitioner had one full year, until June 4, 2019, to timely file a federal habeas petition. The instant federal petition was filed 86 days later, on August 29, 2019. The Petition is timely under that scenario only if the limitations period was tolled for at least 86 days.

Although unclear, Petitioner appears to imply that the limitations period began to run after his second appeal was denied on August 8, 2019, in which he appealed the denial of his motion to modify his probation and raised the constitutional claims he presents here, because that is the decision he is challenging in his federal habeas Petition. (Doc. No. 17 at 7.) However, as set forth above, the state court in that second appeal refused to address his constitutional claims, stating: "This court reviewed the entire record on appeal and the defendant's supplemental brief; we affirmed the judgment of conviction, which included the CPO. As such, the renewed challenge to the originally imposed CPO on constitutional grounds is untimely in this second appeal in the same case, and the Appellate Division's prior decision is final and not subject to reconsideration or further appeal." (Doc. No. 5-1, Lodgment No. 1 at 5.) There is no basis to find that the one-year statute of limitations began to run at the conclusion of that second appeal because the constitutional claims in the instant federal Petition were not properly raised or addressed by the state court and were found to be untimely. <u>See</u> <u>Randel v. Crawford</u>, 604 F.3d 1047, 1056-57 (9th Cir. 2010) (holding that a state court denial as untimely of a request to reopen direct appeal did not restart the statute of limitations). If a new or modified judgment of conviction had been entered as a result of the denial of the motion to modify the terms of probation it could

have restarted the limitations period. See Gonzalez v. Sherman, 873 F.3d 763, 769 (9th Cir. 2017) (holding that under California law an amended judgment awarding a defendant credit for time served constitutes a new judgment restarting the statute of limitations). However, there is no indication in the record that happened here, as Petitioner's motion to modify his sentence was denied and the conditions of his probation were not altered. See Smith v. Williams, 871 F.3d 684, 688 (9th Cir. 2017) (holding that an amended judgment of conviction is considered a "new judgment, starting a new one-year statute of limitations," provided it constitutes the judgment of conviction under which the petitioner is being held); Gonzalez, 873 F.3d at 772 (recognizing that although the correction of a typographical or scrivener's error alone is insufficient to restart the statute of limitations because the judgment itself is not changed, only its erroneous written record, an amended judgment altering the number of presentence credits to which petitioner was entitled restarted statute of limitations); Redd v. McGrath, 343 F.3d 1077, 1081-83 (9th Cir. 2003) (holding that traditional rules of claim accrual apply to habeas proceedings). Thus, the Petition can only be timely if the statute of limitations was tolled for at least 86 days.

The one-year statute of limitations is subject to statutory tolling. See 28 U.S.C. § 2244(d)(2) (providing that the statute of limitations is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in state court.) That provision does not apply here because Petitioner made no collateral attacks on his conviction. Even if his appeal of the motion to modify the parole conditions could be considered a collateral attack within the meaning of § 2244(d)(2), the state court found the constitutional claims untimely, and it is therefore categorically excluded from statutorily tolling of the limitations period. See Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) ("What we intimated in Saffold we now hold: When a postconviction petition is untimely under state law, 'that (is) the end of the matter' for purposes of § 2244(d)(2)."), quoting Carey v. Saffold, 536 U.S. 214, 226 (2002) (holding that an untimely state petition does not statutorily toll the limitations period).

/ / /

The statute of limitations "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). Petitioner "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649, quoting Pace, 544 U.S. at 418.

Petitioner states that on or about May 14, 2019, after the Appellate Division of the Superior Court denied his second appeal on May 7, 2019, he "requested his public appeal counsel to transfer his appeal to the Court of Appeal. Counsel informed Petitioner after [the] Appellate Division ruling that he could no longer be represented by public counsel." (Doc. No. 17 at 9.) Petitioner states he improperly filed such a petition himself on May 21, 2019, but it was rejected because he was represented by counsel. (Id.) After he informed his counsel of those events, counsel filed the petition to transfer on May 29, 2019. (Id.) The Court of Appeal denied the petition for transfer on August 8, 2019, and Petitioner filed the instant federal Petition on August 29, 2019. He contends he is entitled to 51 days of equitable tolling for the delay caused by those events. (Id.)

As set forth above, Petitioner needs tolling for at least 86 days after the limitations period began to run on June 5, 2018 and before he filed the instant Petition on August 29, 2019. The delay he identifies, May 14-29, 2019, represents only 15 days. In any case, the events he contends tolled the limitations period involve his appeal of the denial of his motion to modify the conditions of his probation, not the appeal of his conviction and sentence. As set forth above, that second appeal is not relevant to the calculation of the statute of limitations. Rather, it appears Petitioner contends he thought he had to wait to file his federal habeas Petition until the state appellate court ruled on his petition to transfer the appeal of his motion to modify the conditions of his probation. That is not an "extraordinary circumstance" which prevented him from timely filing his federal Petition. Holland, 560 U.S. at 649; see Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (holding that petitioner's lack of legal sophistication or inability to calculate the statute of limitations is not an extraordinary circumstance warranting equitable tolling).

Accordingly, the Petition for a Writ of Habeas Corpus was filed after expiration of the one-year statute of limitations and is **DENIED** as untimely pursuant to 28 U.S.C. § 2244(d).

## B. Merits

Alternately, the Petition fails on the merits. In order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. To satisfy § 2254(d)(2), a petitioner must show the factual findings relied upon by the state court are objectively unreasonable. Miller-El, 537 U.S. at 340.

Petitioner's original appeal of his conviction and sentence was denied by the Appellate Division of the Superior Court in a minute order with a box checked that the judgment of conviction was affirmed unanimously, and stating:

> Following a review of the entire record pursuant to People v. Wende, and consideration of the supplemental brief, the Appellate Division finds no arguable issues.

> Appellant's appointed counsel Joyce Sweet filed a written waiver of oral argument. Respondent also filed a written waiver of oral argument.

Earlier today, the Appellate Division issued an Order denying Appellant's request to augment the record, and his request to continue oral argument and for the appointment of another appellate counsel.

The Presiding Judge, the Honorable Charles R. Gill placed all of this orally on the record, and the appellant was present in Court and got up and exited the courtroom as the judge was making this record.

(Doc. No. 16-2, Lodgment No. 5 at 2.)

Thus, Petitioner's constitutional claims were summarily denied by the appellate division of the superior court on direct appeal of his conviction and sentence, and he did not appeal further. The lower court, the trial court, had previously summarily denied the claims, stating: "The fact that he may inherit the property at some point in the future that - requiring him to stay 100 yards away from these women, M[s]. Weiss and M[s]. Ursetti, does not violate any of his constitutional rights." (Doc. No. 5-1, Lodgment No. 1 at 2 n.1.) As noted above, the Appellate Division of the Superior Court, in denying Petitioner's appeal from the denial of his motion to modify the conditions of his probation, refused to revisit its denial of the constitutional claims it had rejected in the original appeal. In applying the provisions of 28 U.S.C. § 2254(d) to a summary denial, the Court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme] Court." Harrington v. Richter, 562 U.S. 86, 102 (2011).

### 1. Claim One

Petitioner alleges in claim one that his right to peaceably assemble in his mother's house and to be secure therein to live with his wife and take care of his aging mother as protected by the First Amendment to the United States Constitution, was violated by the imposition of a 100-yard stay away order because it exceeded the trial judge's discretion in balancing the interests of the parties because there was no violence by Petitioner toward the protected parties and the trial judge stated "we almost always issue 100 yard stay away orders." (Doc. No. 1 at 5.) Respondent answers Petitioner is unable to show that the state

court adjudication of any claim presented is contrary to, or an unreasonable application of, clearly established federal law because Petitioner has identified no clearly established United States Supreme Court authority controlling his claims. (Doc. No. 15-1 at 14-18.) Petitioner replies that he raised different constitutional claims in his appeal of the denial of his motion to modify his probation than he did on direct appeal, and the Appellate Division's determination that the claims were the same and its refusal to address them in his second appeal amounts to an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2), and that court's disregard of the clearly established federal law he cited in support of his claims is unreasonable under 28 U.S.C. § 2254(d)(1). (Doc. No. 17 at 10.)

The Supreme Court has held that the First Amendment protection of freedom of association includes intimate human relationships, stating:

> Our decisions have referred to constitutionally protected "freedom of association" in two distinct senses. In one line of decisions, the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusions by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purposes of engaging in those activities protected by the First Amendment - speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties.

Roberts v. United States Jaycees, 468 U.S. 609, 617-18 (1984).

The Supreme Court has recognized that "cohabitation with one's relatives" is included in those intimate relationships, and that "[f]amily relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs, but also distinctively personal aspects of one's life." Id. at 619-20. Nevertheless, Petitioner's First Amendment rights are subject to reasonable, narrowly-tailored restrictions. Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); see also Griffin v. Wisconsin, 483 U.S.

868, 875 (1987) (noting that probation conditions are permissible when they "assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large.") When "fundamental rights" are affected, "[t]he test for validity of probation conditions . . . is whether the conditions are primarily designed to meet the ends of rehabilitation and protection of the public." United States v. Terrigno, 838 F.2d 371, 374 (9th Cir. 1988), citing United States v. Lowe, 654 F.2d 562, 567 (9th Cir. 1981).

The state court could have reasonably denied Petitioner's First Amendment claim on the basis that the 100-yard stay away order was necessary to protect the victims and to prevent a repeat of a violation of the original 2-yard stay away order. The 100-yard stay away order was imposed following a criminal conviction arising from a violation of a criminal protective order to stay 2-yards away from the victims, which in turn was imposed as a result of a criminal conviction for resisting arrest arising from a complaint of a violation of an initial civil 2-yard stay away protective order. The record contains findings that Petitioner harassed and intimidated the victims, that he was given a fair chance to live in his mother's house by the imposition of the 2-yard stay away order which he violated when he was seen on security camera footage chasing an elderly woman over an unjustified and insignificant dispute over the placement of a potted plant, that he has anger management issues and intermittent explosive behavior disorder, lacks insight into "how his conduct affects others [and] he blames everyone around him for his circumstances," and "has demonstrated by his own behavior in the past that he won't abide by a two-yard restraining order." (Doc. No. 5-1, Lodgment No. 1 at 2-5.) His contentions that the 100-yard stay away order is unreasonable because his actions did not involve violence, and that a 2-yard stay away order will sufficiently protect the victims, do not support a finding that the parole condition is not narrowly drawn. See Terrigno, 838 F.2d at 374 (holding that probation conditions are narrowly drawn when they "protect the public from a situation that might lead to a repetition of the same crime.") Because the restriction on his right to association is justified by the record and is narrowly tailored to serve important government

interests in protecting the victims from a repeat of the crime for which Petitioner was convicted, the state court adjudication is neither contrary to, nor an unreasonable application of, clearly established federal law. <u>Ward</u>, 491 U.S. at 791; <u>Griffin</u>, 483 U.S. at 874; <u>Terrigno</u>, 838 F.2d at 374 (holding that when fundamental rights are affected, "[t]he test for validity of probation conditions is whether the conditions are primarily designed to meet the ends of rehabilitation and protection of the public.")

Neither is Petitioner entitled to federal habeas relief on the basis that the state court adjudication of claim one is based on an unreasonable determination of the facts. As set forth above, the reasonableness of the 100-yard stay away order has ample factual support in the state court record, and Petitioner has made no showing that those factual findings are unreasonable. <u>See</u> <u>Miller-El</u>, 537 U.S. at 340 (holding that the factual findings relied upon by the state court must be objectively unreasonable to satisfy 28 U.S.C. § 2254(d)(2).) Even assuming Petitioner is correct that the state court erroneously found he raised the same constitutional claims in his original appeal as in his motion to modify the conditions of his probation, and erroneously refused to address the constitutional claims raised in his second appeal and presented here, and assuming 28 U.S.C. § 2254(d)(2) can be satisfied on that basis, he must still show that a federal constitutional violation occurred in order to obtain federal habeas relief. <u>Fry v. Pliler</u>, 551 U.S. 112, 119-22 (2007).

When a federal habeas court addresses a claim which has not been adjudicated on the merits in state court or when 28 U.S.C. § 2254(d)(2) has been satisfied, de novo review is required. <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1167-68 (9th Cir. 2002). Under such a review, "state court judgments of conviction and sentence carry a presumption of finality and legality and may be set aside only when a state prisoner carries his burden of proving that (his) detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution." <u>Hayes v. Brown</u>, 399 F.3d 972, 978 (9th Cir. 2005) (en banc). Were the Court to consider claim one under a de novo review, it would find it fails to provide a basis for federal habeas relief for the reasons discussed above.

/ / /

### 2. Claim Two

Petitioner alleges in claim two he was deprived of liberty and property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution by the 100-yard stay away order because he is being forced to find alternative living arrangements from a house he lived in for 20 years and will inherit by way of a living trust, and without which he is unable to find affordable housing except motel rooms and homeless shelters. (Doc. No. 1 at 7.) He also claims in a wholly conclusory fashion that he was deprived of due process by the Court of Appeal's denial of his petition to transfer his case from the Appellate Division of the Superior Court. (Id.)

The Due Process Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that no person may be deprived of liberty or property without due process of law. Matthews v. Eldridge, 424 U.S. 319, 333-34 (1976). Due process rights are flexible and depend largely on the specific factual circumstances along with a weighing of the governmental and private interests involved. Id. "The requirements of procedural due process apply only to the deprivations of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972). Even to the extent Petitioner can show his liberty or property interests were interfered with by the imposition of the 100-yard stay away order condition of his probation, he was represented by counsel at trial and on appeal and has identified no errors in those proceedings rising to the level of a due process violation. In any case, this claim fails for the same reason as claim one, because any restriction on his fundamental liberty or property rights arising from the 100-yard stay away probation condition is reasonable and narrowly drawn. See Terrigno, 838 F.2d at 374 (holding that when fundamental rights are affected, "[t]he test for validity of probation conditions is whether the conditions are primarily designed to meet the ends of rehabilitation and protection of the public," and that probation conditions are narrowly drawn when they "protect the public from a situation that might lead to a repetition of the same crime.")

### 3. Claim Three

Petitioner alleges in claim three he was deprived of the liberty to travel to his mother's house without due process of law in violation of the Fourteenth Amendment to the United States Constitution by the 100-yard stay away order which prohibits him from living with or near his aging parent and taking care of her. (Doc. No. 1 at 8.) Freedom to travel is often tied to other fundamental rights, such as free speech, free assembly and free association, and is a basic right. <u>Kent v. Dulles</u>, 357 U.S. 116, 126 (1958) ("freedom to travel is, indeed, an important aspect of the citizen's 'liberty.'") This claim fails for the same reason as claim one. <u>See</u> <u>Terrigno</u>, 838 F.2d at 374 (holding that when fundamental rights are affected, "[t]he test for validity of probation conditions is whether the conditions are primarily designed to meet the ends of rehabilitation and protection of the public," and that probation conditions are narrowly drawn when they "protect the public from a situation that might lead to a repetition of the same crime.")

### 4. Claim Four

Petitioner alleges in his fourth and final claim, in a wholly conclusory fashion, that he was denied the privileges and immunities of United States citizenship without due process of law as a result of the order requiring him to say 100 yards away from his home. (Doc. No. 1 at 10.) The Privileges and Immunities Clause of Article IV of the United States Constitution provides that: "The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." U.S. Const. art. IV, § 2, cl. 1. The Privileges and Immunities Clause of the Fourteenth Amendment to the United States Constitution provides that: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. The Supreme Court has identified the "fundamental" rights protected by those clauses generally as:

> protection by the Government; the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety, subject nevertheless to such restraints as the Government may justly prescribe for the general good of the whole. The right of a citizen of one State to pass through or reside in any other State for the purposes of trade, agriculture, professional pursuits, or otherwise; to claim the

benefit of the writ of *habeas corpus*; to institute and maintain actions of any kind in the courts of the State; to take, hold, and dispose of property, either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the State, may be mentioned as some of the particular privileges and immunities of citizens, which are clearly embraced by the general description of privileges deemed to be fundamental; to which may be added the elective franchise, as regulated and established by the laws or constitution of the State in which it is to be exercised.

Blake v. McClung, 172 U.S. 239, 249 (1898).

Petitioner has not alleged he was deprived of any fundamental right protected by those clauses not already discussed, and this claim fails for the reasons set forth above.

In sum, the state court adjudication of Petitioner's claims is neither contrary to, nor involves an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. The Court would also deny the claims under a de novo review. The Petition is **DENIED** on that basis as an alternate to untimeliness.

## IV. CERTIFICATE OF APPEALABILITY

The threshold for granting a Certificate of Appealability is "relatively low." Jennings v. Woodford, 290 F.3d 1006, 1010 (9th Cir. 2002). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" Buck v. Davis, 137 S.Ct. 759, 773 (2017), quoting Miller-El, 537 U.S. at 327. Petitioner has not met that standard, and a Certificate of Appealability is **DENIED**.

## V. CONCLUSION AND ORDER

Based on the foregoing, the Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED**. The Court **DENIES** a Certificate of Appealability.

DATED: April 2, 2020

_____
MARILYN L. HUFF, District Judge